UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-61089-CIV-COHN/SELTZER

BOARDWALK BROTHERS, INC., a
Florida corporation and PLAY IT AGAIN
FLA, LLC, a Florida limited liability company,

   Plaintiffs,

vs.

MICHAEL SATZ, State Attorney for the 17th
Judicial Circuit, in and for the State of Florida,

   Defendant.
_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Preliminary Injunction [DE 5] ("Motion").[1] The Court has carefully considered the Motion, Defendant Seminole Tribe's Response [DE 12] ("Seminole Tribe Response"), Defendant Michael Satz's Response [DE 13] ("Satz Response"), Plaintiffs' Reply [DE 19] ("Reply"), the argument of counsel at the May 31, 2013 hearing, the record in the case, and is otherwise advised in the premises.

### I. BACKGROUND

On April 18, 2013, Plaintiffs Boardwalk Brothers, Inc. and Play It Again Fla, LLC (collectively "Plaintiffs"), operators of amusement game arcades, filed a complaint in the Circuit Court for the 17th Judicial District in and for Broward County which challenges the constitutionality of newly enacted Chapter 2013-2. The statute excludes from the

---

[1] The text of the Motion is actually found within the papers attached to Defendant Satz's notice of removal. See DE 1-2 at 17-22.

definition of amusement games or machines "casino style games in which the outcome is determined by factors unpredictable by the player or games in which the player may not control the outcome of the game through skill." Fla. Stat. § 849.161(1)(a). On April 24, 2013, Plaintiffs filed the instant Motion which seeks a preliminary injunction enjoining enforcement of the statute. A copy of the Complaint and the Motion were mailed and emailed to Defendant Michael Satz, State Attorney for the 17th Judicial Circuit in and for the State of Florida ("Satz") and the Florida Attorney General on April 24, 2013. Defendant Satz was personally served with the Complaint on May 7, 2013. Defendant Satz removed the case to this Court on May 14, 2013. Notice of Removal [DE 1]. On May 15, 2013, the Court granted the Seminole Tribe of Florida's ("Seminole Tribe") unopposed motion to intervene as a Defendant in this matter. See Order Granting the Seminole Tribe of Florida's Motion to Intervene [DE 4].

In the Complaint[2], Plaintiffs contend that Chapter 2013-2 which amends Fla. Stat. §§ 849.16 and 849.161 is "arbitrary, irrational, not reasonably related to a legitimate governmental purpose, and void for vagueness." Compl. ¶ 11. Plaintiffs argue that because amusement games are not illegal under Florida law, limiting operation of the machines to "insertion of a coin" is vague, arbitrary, and not rationally related to any legitimate government purpose." Id. ¶ 12. The Plaintiffs also allege that

---

[2] On May 29, 2013, after Defendants' responses to the Motion were filed, Plaintiffs filed an Amended Complaint. The Amended Complaint adds a single paragraph to the Complaint. This paragraph alleges that (1) Plaintiffs' arcades provide a social gathering and entertainment venue for senior citizens; (2) Plaintiffs enjoy a special relationship with these senior citizens; and (3) that the First Amendment right of association of these senior citizens is threatened by Fla. Stat. § 849.16(1)(a). Am. Compl. [DE 20] ¶ 3.5.

2

the definition of "merchandise" under the statute is vague, arbitrary, and not related to any legitimate governmental purpose as is the exclusion of "gift cards or certificates" from this definition. Id. ¶ 13. Plaintiffs contend that the statute's exclusion of "casino style games in which the outcome is determined by factors unpredictable by the player or games in which the player may not control the game" from the definition of amusement games or machines is void for vagueness. Id. ¶ 14. Finally, Plaintiffs argue that the phrases "[o]utcome is determined by factors unpredictable to the player," id. ¶ 15, and "[g]ames in which the outcome of the game through skill" are void for vagueness. Id. ¶ 16. Plaintiffs have now moved for a preliminary injunction in which they seek to enjoin enforcement of Fla. Stat. § 849.161 on the grounds that Fla. Stat. § 849.161(1)(a) is facially unconstitutional because it is void for vagueness.[3] Defendants Satz and Seminole Tribe oppose the Motion.

## II. DISCUSSION

### A. Legal Standard.

Federal procedure governs whether a preliminary injunction is appropriate in this case. See Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1448 (11th Cir. 1991). To obtain a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the defendant is not enjoined; (3) the threatened injury to the plaintiff outweighs the harm an injunction

---

[3]     Although Plaintiffs raise additional constitutional challenges to Fla. Stat. § 849.161 in their Complaint, the Motion is limited solely to whether Fla. Stat. § 849.161(1)(a) is void for vagueness, and therefore, whether enjoinment of the entire statute is proper. See Satz Response at 4. Accordingly, the Court will restrict its analysis solely to whether Fla. Stat. § 849.161(1)(a) is void for vagueness.

may cause defendant; and (4) the injunction would not disserve the public interest. See Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003) (quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir.1998) (internal citations and quotations omitted)).

Here, Plaintiffs raise a facial challenge to the constitutionality of Fla. Stat. § 849.161(1)(a). See Motion at 6 ("The facial unconstitutionality of Florida Statute section 849.161(1)(a) requires that it be invalidated."). "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." Indigo Room, Inc. v. City of Fort Myers, 710 F.3d 1294, 1302 (11th Cir. 2013) (quoting Horton v. City of St. Augustine, 272 F.3d 1318, 1329 (11th Cir. 2001) (internal quotation marks omitted)). In order to successfully bring a facial challenge, "the challenger must establish that no set of circumstances exists under which the Act would be valid." Id. (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

Specifically, Plaintiffs argue that Fla. Stat. § 849.161(1)(a) is void for vagueness. Motion at 2. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Gonzales v. Carhart, 550 U.S. 124, 148-49, (2007) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)). "[T]he more important aspect of vagueness doctrine is not actual notice, but the other principal element of the

4

doctrine-the requirement that a legislature establish minimal guidelines to govern law enforcement. . . . Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Kolender, 461 U.S. at 358 (internal quotation marks omitted).

"Facial vagueness occurs when a statute is utterly devoid of a standard of conduct so that it simply has no core and cannot be validly applied to any conduct." High Ol' Times, Inc. v. Busbee, 673 F.2d 1225, 1228 (11th Cir.1982). However, "if persons of reasonable intelligence can derive a core meaning from a statute, then the enactment may validly be applied to conduct within that meaning and the possibility of a valid application necessarily precludes facial invalidity." Indigo Room, Inc., 710 F.3d at 1302 (quoting Busbee, 673 F.2d at 1228 (internal quotation marks omitted)). As the Eleventh Circuit has recently stated:

> [t]he court "review[s] statutes for vagueness concerns only when a litigant alleges a constitutional harm." Bankshot Billiards, 634 F.3d at 1349. These harms come in two forms. "In the first form, a person violates the vague law, is indicted, and then moves the trial court to dismiss the indictment ... arguing that he did not receive notice that his conduct was proscribed." Id. The constitutional harm in this context is "the deprivation of liberty." Id. at 1349-50. The second form is implicated when a litigant asks the court to review a vague statute before it is enforced. Id. at 1350. Such claims are reviewed because "the litigant is chilled from engaging in constitutionally protected activity." Id. Thus, the second type of vagueness challenge "provides law-abiding citizens with a middle-road between facing prosecution and refraining from otherwise constitutional conduct." Id. If one of the two constitutional harms delineated above is implicated, the court looks to whether the ordinance "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Ga. Pac. Corp. v. Occupational Safety & Health Review Comm'n, 25 F.3d 999, 1005 (11th Cir.1994) (internal quotation marks omitted).

Indigo Room, Inc., 710 F.3d at 1301 (footnote omitted).

## B. Whether Plaintiffs Can Raise a Facial Challenge to the Statute.

In the Motion, Plaintiffs contend that they are entitled to a preliminary injunction enjoining enforcement of Fla. Stat. § 849.161 because section 849.161(1)(a) is void for vagueness. Motion at 2. As stated above, Plaintiffs raise a facial challenge to the statute. See id. at 6.[4] Specifically, Plaintiffs argue that the exclusion of "casino-style games in which the outcome is determined by factors unpredictable by the player or games in which the player may not control the outcome of the game through skill" from the definition of "amusement games or machines" is void for vagueness. Motion at 2. As a result, Plaintiffs contend that they "are subject to arrest and prosecution under a legislative regime that fails to provide the definiteness that is required in criminal statutes." Id. at 5. Additionally, because section 849.161(1)(a) is void for vagueness, Plaintiffs posit that the entirety of Fla. Stat. § 849.161 should be enjoined because there is no severability clause in the statute and the statute's subparts are incapable of

---

[4] Additionally, as Defendant Seminole Tribe points out, this case does not involve an as-applied challenge because Plaintiffs have failed to develop the factual record necessary to sustain an as-applied challenge. See Seminole Tribe Response at 10; GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1255 n.20 (11th Cir. 2012) (noting that even if an as-applied challenge can be raised in a pre-enforcement review of a statute, "a plaintiff's complaint must include all of the factual allegations necessary to clearly illustrate the context in which the statute will be applied, which Plaintiffs certainly failed to do here."); Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1308 (11th Cir. 2009) ("An as-applied challenge, by contrast, addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party. Because such a challenge asserts that a statute cannot be constitutionally applied in particular circumstances, it necessarily requires the development of a factual record for the court to consider.") (internal citations and quotation marks omitted).

6

severance. Id. at 5-6. Both Defendants, however, argue that Plaintiffs cannot succeed on a facial challenge to the statute.

The State of Florida ("State") prohibits the use or possession of slot machines. See Fla. Stat. § 849.15(1)(a). In order to allow the operation of certain arcade games, the legislature created a safe harbor to the general prohibition against operation of slot machines: Fla. Stat. § 849.161. See Satz Response at 2 (citing Rowe v. Cnty. of Duval, 975 So. 2d 526, 527 (Fla. Dist. Ct. App. 2008)). Fla. Stat. § 849.161(1)(a) provides:

> "Amusement games or machines" means games which operate by means of the insertion of a coin, and which by application of skill may entitle the person playing or operating the game or machine to receive points or coupons, the cost value of which does not exceed 75 cents on any game played, which may be exchanged for merchandise. The term does not include casino-style games in which the outcome is determined by factors unpredictable by the player or games in which the player may not control the outcome of the game through skill.

Fla. Stat. § 849.161(1)(a). As Defendant Satz describes, this safe harbor "does not itself prohibit any conduct; it merely carves out certain games from the slot-machine prohibition." Satz Response at 3. Thus, a game falls outside the definition of "amusement games or machines" if "(i) it does not operate by the insertion of a coin; (ii) it awards points or coupons worth more than seventy-five cents on any game played; and (iii) it is a casino-style game." Id.

To be successful on a facial challenge to this statute, Plaintiffs "must establish that no set of circumstances exists under which the Act would be valid." Indigo Room, 710 F.3d at 1302. "A facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [a]ct would be valid." United States v. Brown, 364

F.3d 1266, 1268 (11th Cir. 2004) (quoting Salerno, 481 U.S. at 745). Here, Defendant Seminole Tribe argues that Plaintiffs cannot succeed on a facial challenge because "[t]he core meaning of the Act is [ ] easy to derive[:] Florida has a policy of not permitting minors to gamble." Seminole Tribe Response at 11. According to the Seminole Tribe, the statute is intended to ensure that casino-style games are not available in arcades, businesses which cater to minors. Id. Defendant Satz also argues that Plaintiffs cannot raise a facial challenge to the statute because "Plaintiffs cannot demonstrate that the law–even with the allegedly vague provisions–is incapable of constitutional application." Satz Response at 8. For example, Defendant Satz argues, if a business operated game machines that provide points or coupons worth more than seventy-five cents, the machines would fall outside the safe harbor, thus demonstrating that the statute can be constitutionally applied. See id. at 8-9. Similarly, if a game machine was operated by credit card, paper currency or some other object, it would fall outside the safe harbor. Thus, the Court agrees with Defendant Satz that there are constitutional applications of the statute and Plaintiffs have failed to meet their burden of establishing that the statute could never be valid.

This result is supported by recent Eleventh Circuit precedent. In Indigo Room v. City of Fort Myers, for example, the Eleventh Circuit held that a statute that regulated the admittance of underage individuals into alcoholic beverage establishments was not facially invalid. 710 F.3d at 1302. Specifically, the court found that the plaintiff had failed to establish that the statute was facially invalid where "[a] core meaning can be derived from the Ordinance at issue—individuals under the age of 21 are not permitted in alcoholic beverage establishments in the City of Fort Myers." Id. Similarly, in

GeorgiaCarry.Org, Inc. v. Georgia, a case cited by Defendant Satz, the Eleventh Circuit held that a facial challenge to a Georgia law prohibiting firearms in certain places such as houses of worship failed because the law was capable of "numerous constitutional applications." 687 F.3d at 1266. For example, a private house of worship would be able to prohibit license holders from carrying firearms on their property. Id. at 1261. Because Plaintiffs here have similarly failed to establish that there are no set of circumstances under which Fla. Stat. § 849.161 would be constitutional, their facial challenge fails.

Next, Defendant Satz argues that Plaintiffs' facial challenge also fails because they cannot prove that the law does not clearly cover their conduct. Satz Response at 9-10. Defendant Satz points out that Plaintiffs have failed to provide details regarding their businesses or otherwise demonstrate that "the challenged provisions have any applicability to their businesses." Satz Response at 10. The Court agrees with this assessment. The Complaint states that Plaintiff Boardwalk Brothers, Inc. operates 60 "amusement machine games." Compl. ¶ 2. Plaintiff Play It Again Fla, LLC operates 105 "amusement game machines." Id. ¶ 3. The Complaint fails to describe what type of games they provide or otherwise articulate why Plaintiffs fear they will be subject to prosecution under the revised statute while they simultaneously claim to have operated in conformity with a previous version of the statute. See id. ¶ 8. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982)

(footnote omitted). Accordingly, given the limited record regarding Plaintiffs' businesses, the Court cannot determine whether the challenged provision even applies to Plaintiffs' businesses. Thus, Plaintiffs have failed to demonstrate that they can raise a facial challenge.

### C. Whether Plaintiffs Have Met the Standard for Preliminary Injunctive Relief.

Even if Plaintiffs could raise a facial challenge to the statute, Defendants argue that denial of the Motion would still be proper because Plaintiffs have failed to meet the standard for preliminary injunctive relief. See Seminole Tribe Response at 4-10; Satz Response at 11-20. In the Motion, Plaintiffs conclusorily state that they have established the elements for a preliminary injunction. See Motion at 6. For the reasons discussed below, the Court agrees with Defendants that Plaintiffs have failed to meet the standard for issuance of a preliminary injunction.

### 1. Whether Plaintiffs Have a Substantial Likelihood of Success on the Merits.

Defendant Seminole Tribe contends that Plaintiffs cannot establish a likelihood of success on the merits on their vagueness claim[5] because the statute is "not unconstitutionally vague." Seminole Tribe Response at 7. Defendant Satz similarly argues that the challenged phrase is not void for vagueness because "the core meaning of the amended statute is apparent." Satz Response at 13. The Court finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits of their vagueness claim because Fla. Stat. § 849.161(1)(a) is not unconstitutionally vague.

---

[5] Defendant Seminole Tribe discusses the preliminary injunction elements for all allegations in the Complaint. As stated previously, the Court has confined its analysis solely to Plaintiffs' claim that Fla. Stat. § 849.161(1)(a) is void for vagueness, the sole claim raised in the Motion.

10

A statute is not void for vagueness where "the meaning of the words used to describe the [impermissible] conduct can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning." United States v. Eckhardt, 466 F.3d 938, 944 (11th Cir. 2006) (citations and internal quotation marks omitted). As both Defendants point out, phrases similar to "outcome is determined by factors unpredictable by the player" and "games in which the player may not control the outcome of the game through skill" have previously been considered by Florida courts. See Satz Response at 13; Seminole Tribe Response at 7. In Deeb v. Stoutamire, 53 So. 2d 873 (Fla. 1951), the Florida Supreme Court interpreted the phrase "any element of chance or of other outcome of such operation unpredictable by him." Id. at 874. In holding that a mechanical bowling machine was primarily a game of skill, the court observed that:

> In the last analysis, we must decide the nature of the result which is unpredictable by the player. Certainly the outcome of any game at all dependent upon the exercise of human skill is essentially unpredictable. If this were not so, match games like golf and trap shooting would really be dreary, monotonous affairs.
>
> It seems to us that inasmuch as the machine itself is on trial, so to speak, it should not be condemned unless this element of unpredictability is inherent in it. True, the player when he 'activates' the device by inserting his coin cannot predict what score he will make; but from the standpoint of the machine there is no occasion even to *predict* that there will be an accurate registration of his control of the pucks as the player slides them expertly or inexpertly toward the springs forming contact with the scoreboard. Such is a certainty.
>
> It is our thought that the element of unpredictability is not supplied because a player may not be sure what score he can accomplish, but that it must be inherent in the machine. . . .
>
> We conclude that in the process from the insertion of a coin until the last puck

11

has been slid down the alley, the score totaled has not depended on chance or other result unpredictable by the player, except such chance or unpredictability as is traceable to his own skill, which we interpret the law not to mean, as distinguished from the chance or unpredictability of the mechanism, which we construe the law to proscribe.

Id. at 874-75. Additionally in State v. Broward Vending, Inc., 696 So. 2d 851 (Fla. Dist. Ct. App. 1997), the Fourth District Court of Appeal held that where "the game is set to play itself and to record a certain win/loss ratio[,] . . . the element of chance is inherent in the game." Id. at 852. These prior Florida cases clearly put Plaintiffs on notice of the meaning of the phrase "outcome is determined by factors unpredictable by the player or games in which the player may not control the outcome of the game through skill." See Fla. Stat. § 849.161(1)(a); see also Martin v. Lloyd, 700 F. 3d 132, 136-37 (4th Cir. 2012) (holding that prior South Carolina cases interpreting whether a device is a "game of chance" demonstrate "'a plainly legitimate sweep' and more than a conceivable application, which is all that is required to survive a facial challenge to a criminal statute where constitutional rights are not implicated."). As, the Fourth Circuit stated in Martin v. Lloyd, "gambling implicates no constitutionally protected right." 700 F.3d at 135 (quoting United Sates v. Edge Broad. Co., 509 U.S. 418, 426 (1993)). Additionally, as the Eleventh Circuit observed in Bankshot Billiards, Inc. v. City of Ocala, 634 F.3d 1340 (11th Cir. 2011), a plaintiff who is chilled from conducting a business activity in which he once engaged fails to demonstrate a constitutional injury. Id. at 1350.

In response to Defendants' criticism that the Complaint fails to implicate any constitutional rights, however, Plaintiffs have amended the Complaint to assert that they have a special relationship with senior citizens who patronize their arcades and that enforcement of the statute "denies those citizens their First Amendment rights of

association." Am. Compl. ¶ 3.5. Assuming arguendo that Plaintiffs have standing to bring a suit on behalf of their patrons–which the Court highly doubts[6]–Plaintiffs have failed to demonstrate that the statute violates their patrons' First Amendment right to "association for social purposes." See Reply at 6.[7] First, it is doubtful that patrons who

---

[6] The Court is not persuaded by Plaintiffs' reliance on Craig v. Boren, 429 U.S. 190 (1976), for the proposition that they have standing to challenge a statute which infringes their customers' constitutional right to association. See Reply at 6-8. As the Supreme Court held in Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989): "[w]hen a person or entity seeks standing to advance the constitutional rights of others, we ask two questions: first, has the litigant suffered some injury-in-fact, adequate to satisfy Article III's case-or-controversy requirement; and second, do prudential considerations which we have identified in our prior cases point to permitting the litigant to advance the claim?" Id. at 624 n.3. As discussed in Section C.2, infra, Plaintiffs have failed to demonstrate a cognizable injury. Additionally, Plaintiffs have failed to establish that prudential considerations support their bringing this action on behalf of their senior citizen customers. See Caplin & Drysdale, Chartered, 491 U.S. at 624 n.3 ("The second inquiry-the prudential one-is more difficult. To answer this question, our cases have looked at three factors: the relationship of the litigant to the person whose rights are being asserted; the ability of the person to advance his own rights; and the impact of the litigation on third-party interests."). There is no evidence before the Court that Plaintiffs' senior citizen customers are unable to bring suit on their own behalf, if they so desire. Moreover, unlike the plaintiff's customers in Craig, who were denied the right to obtain to beer under the challenged Oklahoma statute, if Plaintiffs' customers desire to associate and play "casino-style games," they need only go to one of Florida's legally-authorized casinos to do so. Thus, Plaintiffs' failure to demonstrate a constitutional injury on behalf of their senior citizen customers demonstrates that they lack *jus tertii* standing.

[7] According to the Supreme Court:

Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving

13

are unable to frequent Plaintiffs' commercial establishments will suffer any First Amendment harm. As the Supreme Court, in City of Dallas v. Stanglin, stated, "[i]t is clear beyond cavil that dance-hall patrons, who may number 1,000 on any given night, are not engaged in the sort of 'intimate human relationships' referred to in Roberts." 490 U.S. at 24; see also Roberts, 468 U.S. at 621 (holding that local Jaycees' chapters which were "neither small nor selective" and whose "activity central to the formation and maintenance of the association involves the participation of strangers" were not entitled to constitutional protection regarding their decision to exclude women). Second, Plaintiffs have failed to articulate how the statute prevents their patrons from associating with one another, given that the statute does not prevent senior citizens

---

other individual liberties.

Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984). It appears that Plaintiffs are raising a freedom of association under the first line of cases described above. See Reply at 6. To the extent that Plaintiffs contend that their patrons enjoy some right to expressive association, this argument has been squarely rejected by the Supreme Court:

> The Dallas ordinance restricts attendance at Class E dance halls to minors between the ages of 14 and 18 and certain excepted adults. It thus limits the minors' ability to dance with adults who may not attend, and it limits the opportunity of such adults to dance with minors. These opportunities might be described as "associational" in common parlance, but they simply do not involve the sort of expressive association that the First Amendment has been held to protect. The hundreds of teenagers who congregate each night at this particular dance hall are not members of any organized association; they are patrons of the same business establishment. Most are strangers to one another, and the dance hall admits all who are willing to pay the admission fee. There is no suggestion that these patrons "take positions on public questions" or perform any of the other similar activities described in Board of Directors of Rotary International v. Rotary Club of Duarte, 481 U.S. 537, 548, 107 S.Ct. 1940, 1947, 95 L.Ed.2d 474 (1987).

City of Dallas v. Stanglin, 490 U.S. 19, 24-25 (1989).

from congregating elsewhere if Plaintiffs' businesses are closed.[8]  Moreover, there is no evidence before the Court that enforcement of the statute would force Plaintiffs out of business and prevent patrons from associating at their establishments.  Instead, the statute merely limits the types of games that might be offered.  And even if the statute did force Plaintiffs out of business, no citizen enjoys a constitutional right to play amusement games.[9]  See Martin, 700 F.3d at 135.  Finally, as discussed in Section B, supra, the challenged statute is not vague in all its applications.  Bankshot Billiards, Inc., 634 F.3d at 1352 n.18.  Accordingly, Plaintiffs have failed to demonstrate a likelihood of success on their vagueness claim as to this phrase.

The Court also agrees with Defendants that Plaintiffs have failed to establish a likelihood of success on the merits on their vagueness challenge regarding the phrase "casino-style games."  See Satz Response at 14-15; Seminole Tribe Response at 8.  Although Plaintiffs contend that this phrase is "obscure and perplexing," Motion at 4, Plaintiffs also concede that the Court may look to a term's common or ordinary meaning to define it.  Id. (citing State v. Nichols, 892 So. 2d 1221, 1227 (Fla. Dist. Ct. App. 2005)).  The phrase "casino-style games" has a common or ordinary meaning that is known to the general population.  See Eckhardt, 466 F.3d at 944 (holding that a statute is not vague where "the words themselves . . . possess a common and generally accepted meaning.").  "Casino-style games" refers to the types of games that are

---

[8]   It should be noted, however, that Plaintiffs have not alleged that the statute has forced them to shutter their businesses.

[9]   Additionally, as discussed in Footnote 6, supra, if senior citizens desire to associate and play "casino-style games," they may still meet at local casinos to do so.

commonly played in a casino. See State ex rel Chwirka v. Audino, 260 N.W. 2d 279, 284 (Iowa 1977) (finding that "casino type games" are games such as blackjack, craps, and roulette). Thus, because this term has a common and ordinary meaning, it gives the public fair notice regarding what games fall outside of the statute's safe harbor. See Busbee, 673 F.2d at 1229.

The best evidence that the term "casino-style games" is not vague, as Defendant Seminole Tribe points out, is that the related phrase "casino-style gaming" appears in Plaintiff Play it Again Fla, LLC's marketing materials. See Exhibit B to the Seminole Tribe's Response [DE 12-2]. If this phrase was as "devoid of meaning," Reply at 2, as Plaintiffs contend, Plaintiff Play it Again Fla, LLC would not utilize it within its advertisements. Clearly, at least one plaintiff believes that the average person understands what the phrase means. Thus, it defies logic for Plaintiffs to argue that the phrase "casino-style games" is vague. Accordingly, Plaintiffs have failed to demonstrate a likelihood of success on the merits as to their vagueness claim regarding this phrase.

### 2. Whether Plaintiffs Face a Substantial Threat of Irreparable Injury.

To be entitled to injunctive relief, Plaintiffs must establish that they face an irreparable injury. Moreover, the asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). Both Defendants assert that Plaintiffs have failed to demonstrate any injury, let alone an irreparable injury. See Satz Response at 17; Seminole Tribe Response at 4. The Court agrees. Although Plaintiffs aver that they "are subject to arrest and prosecution," Motion at 5, they also allege in their Complaint that their amusement

centers "comply with the former and present legislative description" of arcade amusement centers. Compl. ¶ 10. Thus, it is unclear to the Court exactly what type of games Plaintiffs operate and why they might be subject to arrest under the statute. Additionally, as Defendant Satz points out, Plaintiffs' decision not to engage in former business activity based upon the existence of the statute does not, standing alone, constitute a constitutional injury. See Satz Response at 18 (citing Bankshot Billiards, Inc., 634 F.3d at 1351). Without a finding of a likelihood of an "actual and imminent" irreparable injury, preliminary injunctive relief is improper. See Siegel, 234 F.3d at 1176 ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."). Accordingly, this factor does not support issuance of a preliminary injunction.

### 3. Whether the Balance of the Equities Weigh in Favor of a Preliminary Injunction.

Defendant Satz argues that Plaintiffs cannot establish that their injury outweighs the harm to the State, particularly given that Plaintiffs have failed to demonstrate a cognizable injury. See Satz Response at 18. As discussed above, the Court finds that Plaintiffs have failed to demonstrate that they will suffer an imminent injury if enforcement of the statute is not enjoined. Additionally, even if Plaintiffs' fear of prosecution did constitute a cognizable injury, this injury would not outweigh the State's interest. Because gambling "falls into a category of 'vice' activity," it "c[an] be, and frequently has been, banned altogether." Edge Broad. Co., 509 U.S. at 426. Thus, the State has a significant interest in proscribing the behavior regulated in the statute. Plaintiffs have failed to articulate any interest they have which overrides the State's

substantial interest in regulating gambling.

### 4. Whether an Injunction Would Serve the Public Interest.

Finally, both Defendants contend that Plaintiffs have failed to establish that an injunction will benefit the public interest. See Satz Response at 20; Seminole Tribe Response at 10. For the reasons discussed above, the Court finds that Plaintiffs have failed to meet their burden to establish this element. As Defendant Seminole Tribe points out, Fla. Stat. § 849.161 "was enacted to regulate the operation of skill-based arcade games offered at specified arcade amusement centers and truck stops if they comply with the requirements of law and was not provided as a vehicle for the conduct of casino-style gambling." Seminole Tribe Response at 10 (quoting Ch. 2013-2, Laws of Florida § 1(4)). Accordingly, the State has an important public interest in limiting gambling and preventing minors from gambling. Thus, the public interest does not favor enjoinment of the statute.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Preliminary Injunction [DE 5] is **DENIED**;

2. On or before **June 10, 2013**, the parties are directed to meet and confer regarding the scheduling of this case; and

3. On or before **June 12, 2013**, the parties shall submit to the Court a proposed scheduling order which includes dates for joinder of parties, amendment of pleadings, fact and expert discovery, motions to exclude or limit expert testimony, dispositive motions, mediation, motions in limine, joint pre trial stipulation, submission of deposition designations for trial, calendar call, and trial

date. If the parties believe that any of the above deadlines is inappropriate for this case, they should so indicate in the proposed scheduling order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on this 4th day of June, 2013.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.